PHILIP KRUM, APPELLEE, V. SULLIVAN & SCHABERG TRANS-
FER & FUEL COMPANY, APPELLANT.

FILED JANUARY 2, 1915.  No. 17,989.

1. **Jury:** CHALLENGE: PARTY TO PENDING ACTION. The trial of this
case took place in December, during the October term of the dis-
trict court. Upon the *voir dire* it was disclosed that one of the
jurors was a member of the board of trustees of the village of
Bethany. In the month of October an action in equity brought by
certain individuals to disconnect territory from that village had
been tried and determined. In that action the summons was served
upon this juror. He was challenged for cause under section 8158,.
Rev. St. 1913, on the ground that he was a party to a suit pend-
ing for trial in the court at the term. Under a later statute gov-
erning the selection of juries in Lancaster county, the juror could.
not have been selected or summoned, nor could he have sat in the
month of October. He had no personal interest in the action to·
disconnect territory. *Held*, That under these circumstances it.
was not erroneous to overrule the challenge.

2. ———: ———: CONSULTATION WITH COUNSEL. It is not reversible·
error to overrule a challenge for cause, on the ground that the·
juror has consulted one of the opposite counsel in a legal proceed-
ing.

3. **Master and Servant:** ACTION FOR INJURIES: SUFFICIENCY OF EVI-
DENCE. Conflicting evidence set forth in the opinion examined,
and *held* to be sufficient to sustain the verdict.

4. **Appeal:** ARGUMENT OF COUNSEL. It is erroneous and may be·
prejudicial for counsel in the closing argument to make improper
statements not within the issues. Courts should interfere, even
upon their own motion, to prevent an unwarranted appeal to the
passions or prejudice of jurors; but, when an objection to an
improper remark is sustained, a judgment will not be reversed
on account of it, unless this court is of the opinion that the state-
ments have influenced the jury so as to prejudice the substantial
rights of the complaining party.

5. **Damages.** Where a teamster 24 years old suffered a compound
fracture of both bones of the left forearm, the flesh and tissues
were torn and lacerated, he was incapacitated for labor for more
than a year, suffered four surgical operations at intervals during
this period, lost the control of one finger, the injury resulted 'in
the permanent shortening of the arm, and the bill for surgical

and hospital expenses amounted to over $750, a recovery of $5,026 *held* not to be excessive.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Jesse L. Root, E. C. Strode* and *Max V. Beghtol,* for appellant.

*J. B. Strode* and *G. E. Hager, contra.*

LETTON, J.

Action for personal injuries. Plaintiff recovered, and defendant appeals. The plaintiff was a teamster in the employment of defendant, which is a draying company. At the time of the accident he was about 24 years old. He had worked for defendant for about four months and was earning $47.50 a month. On the day of the accident the defendant was engaged in unloading and delivering two large steam boilers, each six feet in diameter, eight feet long, and weighing about eight tons. Each boiler was upon a separate flat-car. These boilers were unloaded by placing skids so as to form an inclined plane upon one side. An unloading apparatus was then made by making a chain loop around the rail of a side-track, on the other side of the flat-car and parallel thereto, fastening a rope to the chain, thence passing the rope twice around each end of the boiler, bringing the rope back to the chain, where a rope loop was made through which the rope was passed and then wrapped a number of times around the ropes leading to the boiler, at right angles; the free end was then held by a man at right angles to the line, so that when the boiler started to roll down the skids the friction of the wrapped ropes upon the ropes leading to the boiler acted as a brake, and the man holding the end could gradually pay out the rope, and thus control the movement of the boiler down the skids. The first boiler had been unloaded safely in this manner. The testimony shows that this is the usual and customary method of unloading articles of this nature among those engaged in the busi-

ness.  Plaintiff's evidence is to the effect that a separate rope was used at each end of the boiler when the first boiler was unloaded, but that at the unloading of the second boiler a rope about 600 feet long was used, each end being made fast to each end of the boiler and the coil of slack placed in the middle between the two end ropes. It was upon January 25, and about 5 o'clock in the evening or later, when the ropes had been placed around the second boiler.  The management of the operations was in the hands of Mr. Sullivan, who gave directions to the men employed, of whom there were five.  The plaintiff was stationed at one rope and two men were stationed at the other for the purpose of paying out the rope as it descended.  When the word was given to start the boiler, it was pried off the flat-car and onto the skids, and instantly the plaintiff was jerked forward, and his arm caught in the loop formed by the slack rope.  Both bones of his arm were broken and protruded, and the flesh was severely lacerated, cut and torn.

The particular acts of negligence charged in the petition are that, instead of following the plan used in lowering the first boiler, the defendant changed the manner of placing the ropes about the boiler, and, instead of using two ropes, carelessly and negligently used only one rope for that purpose; that, instead of taking the loose end of the rope in a half hitch around a stable and solid object and wrapping or entwining it about the other portion of the rope in order to give the one holding it greater purchase and holding power defendant carelessly and negligently failed so to do, and carelessly directed the plaintiff to take hold of the rope and permit it to loosen gradually so as to lower the boiler, and that, because of the careless and dangerous way in which the rope had been placed by defendant, when the weight of the boiler came upon it, it failed to hold, and the plaintiff's arm became entangled. The defendant pleads assumption of risk and contributory negligence.

The evidence is clear that, in order to secure sufficient friction to lower such a boiler safely, it is essential that

the rope, after being placed through the loop, be wrapped at right angles a number of times around the ropes leading to the boiler, and that, unless this is done, it would be impossible for two men, one at each end of the boiler, to hold eight tons when rolling down the inclined plane. The principal conflict in the evidence is with respect to whether the rope which the plaintiff was holding was wrapped a sufficient number of times around the boiler rope, and also as to whether there was greater danger in using two ends of a long rope with a loose coil in the middle between the ropes than in using a separate rope for each end. It was shown that, where the ends of a single rope were used, when the end was brought back from the boiler passed through the loop, and wrapped the other ropes, the slack would form a loop, while if two separate ropes were used no loop would be formed. If a man stationed to pay out the rope was suddenly jerked forward, the loop formed by using one rope only would be more apt to catch his arm. We think there is sufficient evidence to sustain the finding of the jury that proper care had not been used with respect to wrapping the rope a sufficient number of times, and that the use of a single rope was more dangerous than the other method.

The first assignment is that the court erred in overruling defendant's challenge to the juror Armstrong. Section 8158, Rev. St. 1913, provides that it shall be sufficient cause for the challenge of a juror, "that he is a party to a suit pending for trial in that court, at that term." The evidence shows that Mr. Armstrong was a member of the board of trustees of the village of Bethany, and that a summons was served upon him as such officer in an action in equity brought by certain individuals to disconnect territory from the village. The case was tried to the court and determined in October, 1912. The present action was tried in December, 1912, at the same term. Under the statute, Mr. Armstrong had not been selected as a juror and did not sit in October. Mr. Armstrong's name did not appear as a party to the suit and he had no personal interest in it. There are two reasons why this assignment

should not be sustained: First. Mr. Armstrong was not, strictly speaking, a party to the suit. If the evidence had indicated a personal interest in the controversy, even though his name did not appear, we might perhaps conclude that the word "party" would be sufficiently broad to include him. Second. The evident object of the statute was to prevent a person from acting as a member of the regular panel, who in all probability would be in close association with his fellow jurors during the term, and whose personal relations with them might be calculated to sway their judgment or gain their favor. This would give him an unfair advantage over his adversary. We have no doubt that it would be reversible error for a court to permit a member of the jury, who had a jury case pending at the time for which he was summoned, to sit as a member of the panel. This would permit the very evil which the statute was designed to correct. Defendant has quoted cases from Tennessee and Illinois holding that the statute is to be construed literally. These cases were decided at a time when courts were much more inclined to enforce technical rules, regardless of the reason of the rule, than they are at present. Considering the circumstances of this case, we can see no prejudice to defendant in retaining this juror.

It is urged that the juror had consulted with Mr. Strode, counsel for the village, who is one of the attorneys for the plaintiff. This, however, while it might justify defendant in using a peremptory challenge in order to remove the juror, is not a ground to excuse a juror for cause under the statute.

It is next contended that the evidence is insufficient to sustain the verdict. We have already stated the substance of the proof. It is said, however, that all the witnesses said the rope was wrapped around twice and that this must be true, otherwise the boiler could not have been stopped when it started to roll. The evidence shows that the plaintiff's arm held the rope from going through the loop. This stopped that end of the boiler. Two men were holding the rope at the other end and apparently stopped

that end. Furthermore, the boiler was blocked as soon as it was learned the plaintiff was caught in the rope. There is a conflict as to whether one or two ropes were used in unloading the first boiler, also in regard to the amount of wrapping of the rope the second time. It is not very clear from the plaintiff's witnesses whether the rope was wrapped around once, or twice, or at all the second time. These witnesses were German, and they had some difficulty in expressing themselves clearly in English. Defendant's witnesses said that Sullivan ran the end of the rope through the loop and gave it three or four twists on the line on both sides. The testimony for the plaintiff, if believed, justified the conclusion that the rope was not wrapped more than twice at the most, while there is testimony that it should have been wrapped at least six times. It is also shown by defendant that if the rope was not wrapped it would be impossible to hold the boiler. It seems clear that the rope was not wrapped sufficiently or the accident would not have happened, and it is also clear that the plaintiff was inexperienced, trusted to Mr. Sullivan, and obeyed his orders.

It is next assigned that the court erred in allowing the attorney for plaintiff to appeal to the prejudice of the jury by referring to plaintiff's family and his property. The remark of counsel to which the first objection was taken is only in the record by inference from the objection, but the court sustained the objection. The jury should also have been told to ignore the statement.

The record also shows that counsel said: "Which will you do, let the Sullivan-Schaberg company go without paying anything, or make a pauper out of him, with these debts on his hands, without giving him anything?" This was objected to and the objection overruled. The question at issue was not whether the plaintiff was or would become a pauper, but it was whether the defendant had been guilty of actionable negligence. But we cannot say that the remark itself excited the passions or prejudices of the jury. The record showed that the plaintiff was a laboring man receiving $47.50 a month; that the accident had prevented

Krum v. Sullivan & Schaberg Transfer & Fuel Co.

him from working for more than a year; and that he had incurred debts amounting to over $750 for surgical care and hospital expenses. These were evidently the debts referred to. Under all the circumstances, we do not think the statement was prejudicially erroneous. The language of counsel was flamboyant and oratorical. It would have been better to have left it unsaid. Counsel should be scrupulous to avoid improper statements not within the issues, and courts should interfere, even upon their own motion, to prevent an unwarranted appeal to the passions or prejudices of jurors.

It is next assigned that the court erred in allowing a temporary model to be used in the district court. The same model was used in the argument before this court and no serious complaint was made. It assisted us to obtain an idea of the manner in which the ropes were used, and we find no error in allowing its use.

It is next insisted that the verdict was excessive. The evidence shows that both bones of the plaintiff's arm were broken near the wrist; that the flesh and tissues were so torn and cut that only a strip of flesh and skin was left by which the hand remained attached to the arm; that he was six weeks at the hospital the first time, but after going home the wound was dressed every other day for a month. He then returned to the hospital for a second operation. He remained there for three or four weeks. After this the wound was again dressed at his home for about a month. He was compelled to go to the hospital a third time for another operation, where he stayed three or four weeks. After that still another operation had to be performed to withdraw some wires which had been used to hold the bones of his arm together. It is also shown that he suffered pain for more than a year; that he has no control over his first finger and that the left arm is about two inches shorter than the right. The evidence shows that the surgical and hospital charges are over $750. The jury rendered a verdict for $7,526. The district court required a remittitur of $2,500, which was made, so that the ques-

tion before us is whether a recovery of $5,026 is excessive under the facts proved.

The plaintiff endured great pain and suffered permanent injury. Considering the loss of wages during the time that he was entirely incapacitated and the surgical and hospital expenses, there is left as compensation for his suffering, for the shortening of his arm, and for the loss of the use of the first finger about $3,500. We do not consider this excessive.

The judgment of the district court is

AFFIRMED.

BARNES and HAMER, JJ., not sitting.